UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TRACY BLACKWELL,

     Plaintiff,

v.                                                                                    Case No. 3:20cv11-MCR-HTC

ANDREW SAUL,
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court pursuant to 42 U.S.C. § 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner"), denying Tracy Smith Blackwell's ("Blackwell") application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-83. Pursuant to 28 U.S.C. § 636 and Local Rule 72.2(D), Blackwell's complaint was referred to the undersigned for a report and recommendation. Upon review of the record before the Court, the undersigned finds that the Administrative Law Judge's ("ALJ") denial of SSI is supported by substantial evidence and, thus, recommends the Commissioner's decision be AFFIRMED.

## PROCEDURAL HISTORY

On February 2, 2011, Blackwell protectively filed an application for SSI, claiming disability beginning December 21, 1992.[1]  Tr. 220.[2]  The Commissioner denied Blackwell's application initially and on reconsideration.  Tr. 80-94, 95-111. The ALJ, Renee Hagler, held a hearing on October 23, 2013, (Tr. 44-67), and again on March 10, 2014, (Tr. 35-43).  On April 2, 2014, ALJ Hagler issued a decision, finding Blackwell not disabled under the SSA.  Tr. 18-29.  On July 13, 2015, the Appeals Council denied Blackwell's request for further review.  Tr. 1-5.  On July 31, 2015, Blackwell appealed the decision to this Court.  *See Blackwell v. Colvin*, 3:15-cv-340-CJK.

On September 28, 2016, Magistrate Judge Kahn entered a Memorandum Order setting aside the Commissioner's decision and remanding the matter for further proceedings.  Tr. 729-50, *see also Blackwell*, 3:15cv340-CJK at ECF Doc. 13.  Specifically, Magistrate Judge Kahn agreed with Blackwell that the ALJ erred in improperly discounting the opinion of Dr. Belk, finding that the basis for assigning partial weight to Dr. Belk's opinions was not supported by the record.  Tr. 743-50.  On December 19, 2016, the Appeals Council remanded the case back to the

---

[1] Although the ALJ's opinion identifies the date as January 20, 2011, that is the date Plaintiff initially contacted the Social Security Administration to make a claim.  Tr. 218.  However, her application was not completed until February 2, 2011.  *Id.*
[2] The administrative record filed by the Commissioner consists of 14 volumes (ECF Docs. 15-1 through 15-14) and has 1,819 consecutively numbered pages.  References to the record will be by "Tr.," for transcript, followed by the page number.

ALJ and noted that Blackwell had also filed a subsequent SSI claim on August 21, 2015, Tr. 931-37.  Tr. 726.  The Appeals Council directed the ALJ to "consolidate the claim files, create a single electronic record, and issue a new decision on the consolidated claims."  *Id.*

Blackwell's case was assigned to a new ALJ, and on July 14, 2017, ALJ L. Dawn Pischek held a video hearing on the consolidated claims.  Tr. 687-23.   On February 5, 2018, ALJ Pischek issued a 21- page decision, finding that Blackwell was not disabled under the SSA.  Tr. 651-74.  Blackwell filed a request for review with the Appeals Council two days later.  Tr. 928.

On January 3, 2020, Blackwell initiated the instant action by filing a Petition for Writ of Mandamus with this Court seeking an order directing the Commissioner to take action on her appeal.  ECF Doc. 1.  Prior to the petition being served on the Commissioner, on January 31, 2020, the Appeals Council denied Blackwell's request for review, thereby mooting the petition.  Tr. 639.  Subsequently, Blackwell amended the petition to a complaint for judicial review of the Commissioner's final determination denying Blackwell SSI.  ECF Doc. 6.

## **STANDARD OF REVIEW**

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  Substantial evidence is "'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

Additionally, a federal court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court, however, may not look "only to those parts of the record which support the ALJ[,]" but also "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Eligibility for SSI requires that the claimant is under a disability. The SSA defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less twelve months." 42 U.S.C. § 1382c(a)(3)(A). To

qualify as a disability, the physical or mental impairment must be so severe the claimant not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* §  1382c(a)(3)(B).

To determine whether a claimant is disabled, the SSA applies the following five-steps:  (1) whether the claimant is performing substantial gainful activity, (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform her past work and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs in the national economy the claimant can perform.  *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. 2012); 20 C.F.R. § 416.920(a)(4).

## THE ALJ's FINDINGS

In her written opinion on Blackwell's consolidated claims, ALJ Pischek made the following findings supporting her denial of SSI benefits:

•      Blackwell has not engaged in substantial gainful activity since January 20, 2011, the date of her first application.  Tr. 657.

•      Blackwell has the following severe impairments: affective disorder; anxiety disorder; posttraumatic stress disorder (PTSD); substance abuse disorder;

chronic pain disorder; borderline intellectual functioning (BIF); personality disorder; organic mental disorder; right knee osteoarthritis; mild lumbar degenerative disc disease; right foot dysfunction with incomplete healing of metatarsal fracture; left ankle traumatic arthropathy; and obesity. *Id.*

- Blackwell suffers from the following non-severe physical impairments, which when considered singly and in combination, do not cause more than a minimal limitation in the ability to perform basic work activity: asthma, hypertension, bladder dysfunction, hearing loss in the left ear and generalized arthritis. *Id.*

- Blackwell does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925, 416.926). Tr. 658.

- Blackwell has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 416.967(a) except no climbing ladders, ropes or scaffolds; occasional climbing ramps/stairs; occasional kneeling, crouching and crawling; occasional exposure to extreme cold and vibration; no exposure to unprotected heights, moving mechanical parts, fumes, odors, gases, or poor ventilation. Blackwell can perform simple routine and repetitive tasks in 2-hour increments with normal breaks for the duration of an 8-hour workday; have

occasional interaction with the public; and have occasional to no change in the routine work setting.  Tr. 659.

- Considering Blackwell's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR § 416.969 and § 416.969).  Tr. 672.

- Blackwell has not been under a disability, as defined in the SSA since January 20, 2011, the date her first application was filed (20 CFR § 416.920(g)).  Tr. 673.

## FACTUAL BACKGROUND

At the time of the July 14, 2017, hearing before ALJ Pisek, Blackwell was 46 years old, stood 5'7" tall, and weighed 224 pounds.  Tr. 692.  She was divorced and lived with her teenage son.  Tr. 692.  Blackwell has a 9th grade education.  Tr. 49.  When Blackwell was 18 years old, she was involved in a serious vehicle accident, resulting in a ruptured spleen, multiple fractures, and multiple surgeries on her lower extremities, elbow, head and jaw."  Tr. 74.  She applied for SSI benefits in March 1993, and the assigned ALJ issued a fully favorable decision in 1995.  Tr. 73-77.

Although Blackwell did not work for a period of time after the accident, she returned to work for a short period of time between 1999 to 2002, working as a stocker for Walmart.  Tr. 50, 693.  Blackwell left Walmart because "it got too much physically" and because her legs "hurt so bad," and she "was having to get more and

more medication," she "started minimally breaking down and crying at work", to the point where she "couldn't do it no longer." Tr. 693. Blackwell has not worked since leaving Walmart. Tr. 51.

## ANALYSIS

Blackwell raises two issues on appeal: (1) the ALJ failed to articulate explicit and adequate reasons to discredit her subjective statements of pain; and (2) the ALJ failed to articulate good cause for discrediting Dr. Belk's' opinions. ECF Doc. 25 at 3. However, as discussed below, the undersigned finds the ALJ did not err in either respect.

### A. The ALJ Articulated Explicit and Adequate Reasons for Discrediting Blackwell's Subjective Statements of Pain

Blackwell contends that since she left Walmart, her condition has only worsened. Tr. 693. She claims the pain in her legs is getting harder to bear, her memory is going, and she has "a messed up right shoulder and a right knee and a left foot." *Id.* She also had her left ear sewn back on so she "can't hear too good out of it." Tr. 694. Blackwell also has difficulty walking and is limited to walking the distance between her house and her mom's house, which is across the street. Tr. 702. Once she gets to her mom's house, she has to put her legs up and sit in a recliner for 20-30 minutes for the swelling to go down in her feet. Tr. 708.

Blackwell also cannot stand for a long time because her feet start hurting. Tr. 709. She estimates she can probably stand long enough to wash dishes or cook, "for

about 20 minutes" before she has to sit down. Tr. 710. When she sits, Blackwell has to elevate her feet. Tr. 709. Blackwell also cannot sit for long, not even long enough to watch General Hospital, an hour-long program. Tr. 709.

As for her activities of daily living, Blackwell testified she "just tr[ies] to live the day [because] [i]ts too hard to do anything." Tr. 702. And although Blackwell testified she can't "sit with [her] legs down for more than an hour," she also testified she can drive short distances, complete standing leg exercises ordered by her doctor, wash dishes, and cook one pot meals. Tr. 692, 701, 702, 710, 711. The record also shows Blackwell can bathe and dress herself without any assistance. Tr. 471. For pain, Blackwell takes pain medication, prescribed by her treating physician, and "sit[s] in the recliner or in the bed" to elevate her feet. Tr. 709.

Blackwell argues the ALJ did not apply the appropriate legal standard when evaluating her subjective complaints of pain. ECF Doc. 25 at 35. Specifically, Blackwell claims the ALJ did not articulate explicit reasons for discrediting her statements, failed to reference her hearing testimony, relied on excerpts of medical records which had no bearing on her physical pain, and evaluated her daily activities out of context. None of these arguments, however, warrant a reversal of the Commissioner's decision. Blackwell's arguments are clearly belied by the ALJ's 21-page opinion.

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through [her] . . . own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1319 (N.D. Fla. 2008) ("Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.") (citing S.S.R. 96-8p).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223 (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A reversal is warranted *only* if the ALJ's decision contains no evidence of the proper application of the three-part standard. *See Holt*, 921 F.2d at 1223; *see also Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

Once a claimant establishes a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms complained, the ALJ must then "evaluate the intensity, persistence and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect [Blackwell]'s capacity for work." *Qualls v. Astrue*, 428 F. App'x 841, 845 (11th

Cir. 2011) (citing 20 C.F.R. § 404.1529(c)(1)).  To do this, the ALJ must make a

finding about the credibility of Blackwell's statements about her symptoms and their

functional effects.  *Id.*  "In evaluating the intensity and persistence of a claimant's

symptoms, the ALJ considers the entire record, including the objective medical

evidence, the claimant's history, and statements of the claimant and her doctors."

*Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019).  Factors the

ALJ may consider in assessing a claimant's complaints include:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and
> intensity of the claimant's pain or other symptoms, (3) any precipitating
> and aggravating factors; (4) the type, dosage, effectiveness, and side
> effects of the claimant's medication; (5) any treatment other than
> medication; (6) any measures the claimant used to relieve her pain or
> symptoms; and (7) other factors concerning the claimant's functional
> limitations and restrictions.

*Id.*; *see also Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in*

*Disability Claims*, SSR 16-3P (S.S.A. Mar. 24, 2016).

When a claimant testifies to subjective complaints of pain, the ALJ must

clearly articulate adequate reasons for discrediting the claimant's allegations of

disabling symptoms.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)

(quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  The reasons

articulated for disregarding the plaintiff's subjective testimony must be based on

substantial evidence.  *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529,

1532 (11th Cir. 1991).  In determining whether substantial evidence supports an

ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The ALJ cited multiple reasons for finding Blackwell's statements of pain to not be credible, and those reasons are supported by substantial evidence. First, the ALJ went through, in great detail, Blackwell's medical records from 2011 to 2017 and pointed to specific instances where those records failed to support Blackwell's subjective complaints of pain. For example, on April 27, 2011, when Blackwell went to see Dr. William Belk, her primary physician, after having gotten drunk and taken pills, she denied being in pain. Tr. 431, 660. She also described her mood and effect as "normal." *Id.*

On March 15, 2012 Blackwell saw Richard Lucey, M.D. for a consultative disability evaluation. Tr. 475. Blackwell reported she had been in a car accident 19 years prior, which left her with multiple injuries and resulted in Blackwell undergoing ORIF of her left foot and ankle, right knee, and left elbow. *Id.* Blackwell also reported pain and stiffness in those areas. *Id.* Additionally, Blackwell complained of being chronically depressed and suffering from head trauma during the accident. *Id.* Despite these complaints, during his examination of Blackwell, Dr. Lucey found Blackwell had grip strength of 5/5 and had full range of motion of

all the joints of her lower and upper extremities, other than walking with a limp because of a diminished range of movement in her left ankle.  Tr. 476, 661.  Dr. Lucey also noted Blackwell did not use an assistive device for ambulation.  *Id*.  Dr. Lucey diagnosed Blackwell with "mild crepitus in the knees bilaterally."  Tr. 477. As for her mental status, Dr. Lucey found Blackwell to be "alert, pleasant, cooperative and well-groomed without overt mood or thought disturbance currently."  Tr. 476.

Similarly, Dr. Belk's September 10, 2012 examination revealed Blackwell had normal gait, normal muscles and joints, and a mini-mental exam was also normal.  Tr. 520-21, 661.  In November 2013, Blackwell underwent a consultative psychological exam with Dr. John Duffy, who completed a Medical Source Statement opining that Blackwell had no limitations in understanding, remembering, and carrying out simple instructions and only mild limitations in making judgments on simple work-related decisions.  Tr. 616, 662.  Dr. Duffy noted as well that Blackwell had moderate limitations with regard to complex instructions and interacting with the public, co-workers, and supervisors, as well as in responding to usual work situations and changes in routine work settings.  Tr. 616-17, 662.

The ALJ also referenced a second consultative examination of Blackwell performed by Dr. Duffy in November 2015.  Tr. 663, 1153-56.  Although Dr. Duffy noted Blackwell walked with a left-sided limp, "she drove herself around 15 miles

to the office," and "she impressed [him] as adequately reliable."  Tr. 663, 1153.  She was in no apparent distress.  Tr. 663, 1155.  Blackwell told Dr. Duffy "her medicines are helping her with depression symptoms fairly well," and "[h]er most significant difficulties with behavior and emotions have occurred in association with alcohol intoxication and abuse."  Tr. 664,1155.

The ALJ also discussed Blackwell's knee pain and left ankle pain and found the limitation as to both were supported by the medical records.  Tr. 664-666.  However, no greater limitations were warranted based on her subjective complaints because "the physical exams otherwise show normal strength, sensation, gait, muscle and joint findings," and the "x-rays showed mostly mild findings."  Tr. 666.  This conclusion is supported by the record.

As to the knee pain, the ALJ referenced Dr. Eric Kujawski's records.  Tr. 664.  Dr. Kujawski, an orthopedic surgeon, performed a right knee arthrocentesis on Blackwell and also gave her a corticosteroid injection to help with pain.  Tr. 1145-1147, 664.  Dr. Kujawski's records are inconsistent with the severity and intensity of pain reported by Blackwell because, despite reporting her pain as 10/10, Dr. Kujawski notes Blackwell "was able to ambulate out of the office without severe pain," her gait and station were normal, and she used no aides for ambulation.  Tr. 1146, 1133.

As for her left ankle pain, Dr. David Smith, also an orthopedic surgeon, performed a joint injection on Blackwell's left ankle in 2015, and as the ALJ correctly noted, in January 2016, Blackwell reported "significant improvement," which "lasted for several months." Tr. 665, 1414. Dr. Smith also noted Blackwell had "good ankle dorsiflexion and plantar flexion that [was] pain-free. Tr. 1417. Because Blackwell was "very pleased with the improvement offered from the injection," Blackwell requested the doctor proceed with a left subtalar fusion. Tr. 1414. Dr. Smith also noted Blackwell was seeing Dr. Kujawski for knee symptoms and that Blackwell reported the condition being "somewhat better" in the last several days. *Id.*

Blackwell underwent a left subtalar arthrodesis and deep implant removal in February 2016, and, as the ALJ correctly noted, by April 2016, Blackwell reported doing fairly well with some foot pain. Tr. 665, 1535-37, 1540. Blackwell was ready to discontinue further cast mobilization and begin some weight bearing. T. 665, 1540, 1543. By May 2016, Blackwell was wearing CAM boot and using crutches, when she remembered to do so. Tr. 665, 1545. Thus, as the ALJ noted, "Dr. Smith's records, including updated x-rays, after the claimant's February 2016 left ankle surgery showed improvement." Tr. 666.

The ALJ also concluded no greater limitation was necessary for Blackwell's complaints of chronic pain because Blackwell's pain was being managed by

medication.  Tr. 666.  This conclusion is also supported by the record.  Notably, Blackwell began seeing Dr. Christopher Middendorf, an orthopedic doctor, in 2017 for pain management.  Tr. 1524, 1801.  As the ALJ correctly noted, in October 2017, Blackwell reported the medication was 80% effective in relieving her pain and only changed her response after Dr. Middendorf suggested she was not a good candidate for continued opioid therapy and he may consider tapering her off opioids.  Tr. 1775. Dr. Middendorf made this comment after learning, for the first time, of Blackwell's history of suicide attempt in 2012, with intentional overdose on Xanax.  *Id.*

Blackwell argues the ALJ's focus on Dr. Middendorf's comments about reducing her opioid medication has "no bearing on her physical status," because  the reduction was based on her suicide risk and not "because [her] conditions have decreased in severity."  ECF Doc. 25 at 34.  While Blackwell is correct that Dr. Middendorf found Blackwell's prior suicide attempt to be "very concerning," he also reminded Blackwell of her reported pain relief of 80% when she became upset and stated to him, "you are going to reduce my meds when I'm barely getting relief." Tr. 1775.  Also, the October 2017 visit was not the only time Blackwell reported pain relief to Dr. Middendorf.  During her August 3, 2017 visit, she also reported the pain medication was 75% effective and provided relief for up to 5 hours.  Tr. 1786. Likewise, during her September 7, 2017 visit, she reported a greater than 75% relief

and "right knee pain significantly improved following [her] knee injection."  Tr.
1780.

Finally, the ALJ also based the credibility determination on the inconsistency
between Blackwell's subjective complaints and her activities of daily living.  T. 666.
("[C]laimant's range of activities noted throughout the record are consistent with the
ability to perform a range of sedentary work….").  Although "participation in
everyday activities of short duration, such as housework or fishing" does not
necessarily disqualify a claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436,
1441 (11th Cir. 1997), the ALJ may consider a claimant's activities when making
the credibility determination.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir.
1987) ("The regulations do not . . . prevent the ALJ from considering daily activities
at the fourth step of the sequential evaluation process."); *Blacha v. Sec'y of Health
and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider
household and social activities in evaluating complaints of disabling pain.").

Blackwell disagrees with the ALJ's reliance on Blackwell's report of doing
yard work and continuing to wear boots as being taken out of context.  She argues
she does yard work to overcome the pain in her legs and while she was concerned
about not being able to wear boots if she had an ankle fusion, she nonetheless
underwent the fusion.  While that is certainly one interpretation of Blackwell's
statements, those were not the only statements of Blackwell's daily activities relied

upon by the ALJ.  The ALJ also noted Blackwell reported to Dr. Middendorf that she could do housework, cook, and perform social outings and hobbies.  Tr. 666, 1797.  Dr. Middendorf's notes are consistent with Blackwell's testimony at the hearing and other evidence in the record as well.

Despite allegedly disabling pain, Blackwell testified she can drive short distances, complete standing leg exercises ordered by her doctor, wash dishes, and cook one pot meals.  Tr. 692, 701, 702, 710, 711.  The record also shows Blackwell is independent with her grooming and hygiene needs.  T. 471.  Thus, as the ALJ noted, Blackwell "has demonstrated the ability to participate in her own medical treatment and reports ability to drive, cook and clean."  T. 668; *see* Tr. 471 (Dr. Harper's[3] records note Blackwell can drive, do chores, dress herself, take care of her personal hygiene, and prepare meals without help).  Dr. Harper noted Blackwell drove herself to the appointment, attended it alone, and provided her own history.  Tr. 471.  Also, both Dr. Harper and Dr. Duffy concluded, based on their consultative psychological examinations, Blackwell was capable of managing funds independently.  Tr. 615, 661.

Despite the ALJ's detailed decision, Blackwell takes issue with what she contends as the ALJ's failure to specifically reference her testimony.  Specifically,

---

[3] Dr. Julie Harper performed a consultative psychological examination of Blackwell on March 14, 2012.  Tr. 469.

she argues the ALJ improperly rejected her testimony that she cannot sit through a one-hour soap opera show without taking breaks to elevate her feet. ECF Doc. 25 at 30. This testimony however has no support in the record. No medical provider placed such limitations on Blackwell. Furthermore, in the ALJ's RFC determination, the ALJ limited Blackwell to sedentary work[4], limited to simple routine and repetitive tasks in 2-hour increments with normal breaks for the duration of an 8-hour workday. Tr. 659. The record shows the ALJ considered both what Blackwell said at the hearing and what she told her medical providers and weighed those subjective complaints against the objective medical evidence in determining no greater limitations were necessary for her knee pain, leg pain or chronic pain.

The ALJ did not have to address Blackwell's statements one by one or explain as to each why she felt the statement was not credible. Rather, as stated above, it is sufficient for the ALJ to articulate the reasons why she found the subjective statements to not be credible, which is exactly what she did in her detailed discussion of the medical records. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in h[er] decision, so long as the ALJ's decision . . . is not a broad rejection" that would prevent the reviewing court from "conclud[ing] that the ALJ considered

---

[4] Sedentary work is defined as one which involves sitting and occasional walking and standing. 20 C.F.R. § 416.967(a).

[the claimant's] medical condition as a whole").  The ALJ's treatment of Blackwell's subjective statements of pain is supported by substantial evidence.  *See Whitmore v. Soc. Sec. Admin., Comm'r,* 2021 WL 1961926, at *3 (11th Cir. May 17, 2021) (affirming district court's decision to uphold Commissioner's denial of benefits where claimant's subjective statements of pain were inconsistent with the treatment records and activities of daily living).

B. <u>The ALJ Set Forth Good Cause for Discounting Dr. Belk's Opinion</u>

As stated above, Blackwell's other issue on appeal is that the ALJ erred by assigning reduced weight to the opinion of her long-time treating physician Dr. Belk.  In 2004, two years after leaving Walmart, Blackwell began seeing Dr. Belk, who served as Blackwell's primary care physician until his retirement in 2016.  Tr. 388; 1504.[5]

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 416.927.  Absent "good cause" an ALJ must accord considerable or substantial weight to the opinions of a treating physician.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir.

---

[5] Blackwell begins to see Jeremiah Dreisbach, M.D. as her primary care physician in 2017.

2011).  "Good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

When an ALJ discounts a treating physician's opinion he "must clearly articulate the reasons" for doing so. *Phillips*, 357 F.3d at 1240-41.  Additionally, in each case, the ALJ is "required to state with particularity the weight [given to] the different medical opinions." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). As long as the ALJ "articulates specific justification", the reviewing court "will not second guess the ALJ about the weight the treating physician's opinion deserved. As long as an ALJ articulates "articulates specific justification," a reviewing court "will not second guess the ALJ['s] [decision] about the weight the treating physician's opinion deserves." *Hunter v. Comm'r of Soc. Sec. Admin.*, 808 F.3d 818, 823 (11th Cir. 2015).

The ALJ discusses four (4) opinions from Dr. Belk.  First, on January 19, 2011, Dr. Belk wrote a letter opining that Blackwell "has major depression and orthopedic disability due to lower extremity injuries" and that she "is disabled due to her depression and injuries."  Tr. 400.  Second, on February 16, 2012, Dr. Belk completed a Supplemental Mental Impairment Questionnaire, opining that Blackwell "suffers from a mental impairment that significantly interferes with [her]

daily functioning." Tr. 466. Dr. Belk also indicated he prescribes medication for this mental impairment and has referred Blackwell to Lakeview Center for psychiatric/psychological treatment. *Id.* Third, on September 20, 2013, Dr. Belk submitted a supplemental questionnaire as to RFC to the SSA, opining that Blackwell suffered from marked difficulties in the following areas: (1) restriction of activities of daily living; (2) maintaining social functioning; (3) having episodes of deterioration or decompensation in work or work-like settings; (4) understanding, carrying out and remembering in a routine work setting; (5) performing simple tasks; and (6) performing repetitive tasks. Tr. 587-88. Fourth, on September 18, 2015, Dr. Belk completed a Supplemental Mental Impairment Questionnaire, indicating Blackwell had a mental impairment which significantly interferes with her daily functioning, and for which medication had been prescribed. Tr. 1117-18.

The ALJ assigned partial weight to Dr. Belk's opinions and stated she was doing so because "the longitudinal evidence shows [Blackwell] reported doing yard work and many other activities that exceed the limits he endorsed, despite [Blackwell's] impairments," and because the records show Blackwell's pain is well controlled with medication. Tr. 669. The undersigned finds the ALJ's determination to be supported by substantial evidence.

As detailed above, there is considerable evidence in the record that Blackwell was independent with her activities of daily living, including her grooming and

hygiene. Also, she drives, cooks, and can handle chores around the house. She takes herself to her doctor's appointments. Additionally, while it may be that Blackwell does yardwork to forget about her pain, her basis for doing yardwork does not detract from the fact that she nevertheless can and does perform yardwork. Tr. 556, 1035. Dr. Belk's opinion that she has marked restrictions in activities of daily living simply do not bear out in the records.

This Circuit has uniformly held that, "an ALJ need not give a treating physician's opinion considerable weight if the applicant's own testimony regarding her daily activities contradicts that opinion." *Magill v. Comm'r of Soc. Sec.*, 147 F. App'x 92, 94 (11th Cir. 2005). Additionally, the ALJ also noted that Dr. Belk's opinion was inconsistent with his own treatment records, which showed that Blackwell's pain was well controlled, and that her only abnormalities identified during her April 29, 2015 yearly exam, were scars, muscle tenderness, a mild limp, and obesity. Tr. 669, *see Crawford v. Comm'r Of Soc. Sec*., 363 F.3d 1155, 1161 (11th Cir. 2004) (holding that the claimant was not entitled to relief where several physicians' opinions were inconsistent with their treatment notes).

The ALJ also assigned only partial weight to Dr. Belk's opinions of Blackwell's mental limitations, finding that greater weight should be given to the mental health specialists, Drs. Duffy and Harper. The ALJ explained "Dr. Belk's opinion is not adequately supported with pertinent clinical evidence to support

limitations greater than described in the residual functional capacity for any 12 continuous months." Tr. 669.  The ALJ identified specific examples from Dr. Belk's records showing this lack of evidence, such as the fact that, in the September 20, 2013 Supplemental Questionnaire, Dr. Belk identified several limitations related to Blackwell's mental capabilities even though he performed no mental evaluation of Blackwell on that date.

Indeed, unlike Drs. Harper and Duffy, who specifically performed mental evaluations on Blackwell, there is no indication any such evaluation was done by Dr. Belk, other than a mini assessment in September 2012, which was normal.  As the ALJ noted, Dr. Belk's treatment only involved prescribing medication based on Blackwell's self-reported mood at the time of the visit, which frequently fluctuated from normal to depressed.  Tr. 669.  He, however, is not a mental health specialist and referred her to the Lakeview Center for mental treatment.  Tr. 991.

A treating physician, who "is not a mental health specialist . . . is not well qualified to assess [a claimant's] mental functioning." *See De Lashmit v. Comm'r of Soc. Sec.*, No. 2:17-CV-363-FTM-99CM, 2018 WL 4610611, at *4 (M.D. Fla. July 19, 2018), *report and recommendation adopted*, No. 2:17-CV-363-FTM-99CM, 2018 WL 3954341 (M.D. Fla. Aug. 17, 2018).  The ALJ also explained that Dr. Belk's opinions regarding Blackwell's mental limitations were not supported by the mental health records, which showed only "minimal and sporadic" treatment

between April/May 2014 and January 2017.  Tr. 669; *see Hunter v. Comm'r of Soc. Sec.*, No. 5:13-CV-466-OC-18GJK, 2014 WL 12641952, at *4 (M.D. Fla. Dec. 29, 2014), *subsequently aff'd*, 651 F. App'x 958 (11th Cir. 2016) (finding the ALJ articulated good cause for assigning little weight based on a seven-year lapse in mental health treatment.)  And, while Blackwell may have seen Dr. Belk around ten times during that period, she only complained about being depressed roughly two times.  Tr. 1099, 1107.

Finally, the undersigned finds no error in the ALJ's determination that Dr. Belk's opinion that Blackwell was disabled is one reserved for the Commissioner, and thus, is not entitled to any specific weight.  Tr. 670; *see Symonds v. Astrue*, 448 F. App'x 10, 13 (11th Cir. 2011) (holding that "the ultimate issue of disability is left to the determination of the Commissioner; and a statement by a medical source that a claimant is "disabled" or "unable to work" is not binding on the ALJ.").  Thus, the undersigned finds no error in the ALJ's assignment of partial weight to Dr. Belk's opinions.

## <u>CONCLUSION</u>

For the reasons set forth above, the undersigned finds the ALJ's disability determination was supported by substantial evidence and recommends the decision be AFFIRMED.

Additionally, it is respectfully RECOMMENDED:

1.    The decision of the Commissioner be AFFIRMED and Blackwell's applications for Supplemental Security Income be DENIED.

2.    The clerk be directed to enter judgment in favor of the commissioner and close the file.

DONE AND ORDERED this 12th day of July, 2021.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed **within fourteen (14) days** of the date of this Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.